THE STATE OF OHIO, APPELLEE, *v.* FIELDS, APPELLANT.

[Cite as State v. Fields (1973), 35 Ohio App. 2d 140.]

(No. C-72395—Decided April 9, 1973.)

*Mr. Simon L. Leis, Jr.*, and *Mr. William Whalen*, for appellee.

*Mr. H. Fred Hoefle*, for appellant.

PALMER, J. This is an appeal from the judgment of the Court of Common Pleas of Hamilton County entered pursuant to a verdict finding the defendant, the appellant herein, guilty of the burglary of an uninhabited dwelling and grand larceny.

On July 18, 1972, at approximately 3 a. m., an officer of the Cincinnati police department responded to a burglar alarm drop at 1029 West Seventh Street, Cincinnati, at premises occupied by Magnus Metal Company, a manu-

facturer of metallic objects known as journal bearings used in the railroading industry. Arriving at the scene, a few minutes after receiving the run, the officer observed two individuals, whom he identified as the defendant Fields and a codefendant, standing on the loading dock of the Magnus Metals Company building next to some stacked journal bearings which subsequent testimony demonstrated had been removed from inside the secured premises on the evening in question. The officer, using a small radio receiving-transmitter unit attached to his shoulder, broadcast a description of the two suspects and a request for reinforcements and, when his radio receiver audibly responded to this call, the two individuals jumped from the loading dock and began to run. The officer and other units of the police began a general pursuit which resulted in the arrest of Fields some forty-five minutes later at a point approximately one-quarter mile away from the scene.

Following a jury trial in which both defendants declined to offer any evidence or testimony on their behalf, a verdict of guilty on both counts of the burglary of an uninhabited dwelling and larceny of property valued at $1,023.75 was returned against Fields and his codefendant and concurrent sentences were thereafter imposed.

This appeal, on behalf of defendant Fields, presents four assignments of error. Passing for the moment the first assignment of error, the second assignment urges error in admitting certain evidence of the value of the journal bearings over defendant's objections and in overruling his motion for a dismissal of the grand larceny count on the grounds that such value had not properly been proven. The evidence objected to by defendant is that of the plant manager of Magnus Metals Company, who testified that the value of the individual journal bearings fluctuated from time to time depending on the cost of its component metals —copper, tin, lead and zinc. In response to a question whether he knew the value of the bearings in July of 1972, the manager responded that the sales price at the time in question was sixty-five cents per pound. On cross-examination, the following colloquy occurred:

"Q. Mr. Croft, you say you quote a customer 65 cents a pound for that?

"A. Right.

"Q. For one of those, at least, on that day. Who tells you, if anyone, to charge 65 cents a pound?

"A. This is a price that is established in our general offices in Chicago * * *. We get a price letter which is, establishes the prices as of the first of the month.

"Q. And that's the price that pertains all month unless you get

"A. Unless there is a change."

Defendant objects to the allowance of the alleged value of the materials into evidence because the price was determined "in Chicago" and not by the witness who, he argues, had no firsthand knowledge of the factors determining the price of the product at the time in question.

R. C. 2945.75 provides in material part:

"When an indictment or information charges an offense against property by larceny * * * the jury on conviction shall ascertain and declare in their verdict the value of such property."

As was pointed out in *State* v. *Miel*, 115 Ohio App. 366 at 371:

"The obvious purpose of the statute is to have the jury determine the value so the court can know the degree of the offense, or punishment, depending upon whether the value fixed is sixty dollars or more, or is less than sixty dollars."

This purpose is properly served by evidence as to the price at which such property is offered to and purchased by the market at the time in question. It is not necessary for the limited purposes of this section, particularly where the value of the property so patently exceeds the sixty dollar figure, to require further evidence of material, labor, overhead or other costs or factors determining price or value, nor is it necessary that the witness who testifies as to market price be himself familiar with such factors. The section in question does not mandate the services of an ex-

pert in industrial economy to establish the components of value of a manufactured product.

Having produced competent evidence of the per pound value of the property, further testimony was presented that each single journal bearing weighed 34 to 35 pounds, and that forty-five such bearings had been removed from the finishing room inside the Magnus building where they had been secured at the close of business on the evening preceding July 18, 1972, and had been stacked variously on the loading dock outside the enclosure, or beside the loading dock door. The jury, in the absence of any evidence disputing this testimony, declared the value of the property to be $1,023.75. Since we are unable to find any error in either admitting the testimony of the witness, Croft, as to the value of the property, or in overruling defendant's motion to dismiss the grand larceny count on the ground that value had not been proven, we find defendant's second assignment of error not well taken.

Defendant's third assignment of error involves a police officer called by the state who, after identifying himself, was asked whether he knew the defendant. The following exchange then occurred:

"A. I can't say I do or don't. I know the name of Fields, though.

"Q. Do you recognize either one of the defendants in the courtroom today?

"A. I have seen the one there in red before. I don't know where but * * *."

At this point, counsel for defendant interposed an objection which was sustained and the above testimony was ordered stricken. A motion for a mistrial was overruled, and no further testimony was offered by the officer. Defendant argues that the only purpose in calling this officer was an improper attempt by the state to prove the existence of a same or similar offense where defendant's character was not in issue and that the attempt, though aborted, was prejudicial to him.

The fragmentary nature of the episode permits no conclusion as to the motive or purpose of the state in call-

ing the officer, whether for the purpose suggested by defendant, or to show motive or intent, as suggested by the state in its argument. In fact, neither purpose is necessarily improper under R. C. 2945.59, although the point is unnecessary to debate or decide. Objection was made and sustained after the above brief exchange, the testimony was stricken, and the court properly and adequately charged the jury on its duty to disregard such testimony and its duty to draw no inferences or conclusions therefrom, or to speculate therein. A review of the record involving the entire episode reveals no error prejudicial to defendant, whose third assignment of error is, therefore, without merit.

The fourth assignment urges error in overruling defendant's objection to a portion of the state's final argument, which involved a reference to the technical impossibility of securing fingerprints from the substances left at the scene. An examination of the record shows that the above argument was an appropriate and limited response by the state to an argument by counsel for defendant raising a question as to the absence of evidence of fingerprints, and was properly predicated on the testimony of a witness for the state who stated: ''You would be unable to get any (fingerprints) from the journal bearings (and door and glass).'' Defendant's fourth assignment of error is, therefore, not well taken.

We return now to defendant's first assignment of error, which raises a substantial constitutional question. It will be recalled that when the investigating officer arrived at the scene the two suspects, apparently alerted by sounds from the officer's radio, fled and were subsequently arrested some distance away. It will further be recalled that the defendant and his codefendant declined to testify or produce other evidence on their behalf. The alleged error comes about from the following charge of the trial court on the consequences arising from this aspect of the proceedings:

''Now, in this case, there is evidence tending to indicate that both of the defendants fled from the vicinity of the alleged crime. In this connection, you are instructed

that flight in and of itself does not raise a presumption of guilt, *but unless satisfactorily explained,* it tends to show consciousness of guilt or a guilty connection with the crime. If, therefore, you find that one or both of the defendants did flee from the scene of the alleged crime, *and one or both have not satisfactorily explained their conduct in so doing,* you may consider this circumstance together with all other facts and circumstances in the case in determining the guilt or innocence of one or both of the defendants." (Emphasis ours.)

The question presented is whether this instruction unlawfully compromises the undoubted right of a citizen under the Fifth and Fourteenth Amendments of the United States Constitution to remain silent and, further, not to have that silence converted into evidence against him. We hold that it does.

It no longer admits of debate that neither judge nor prosecutor may animadvert upon the failure of a defendant to testify on his own behalf. *Griffin* v. *California,* 380 U. S. 609. While this has not always been the rule in Ohio, it is clearly so now. *State* v. *Howell,* 4 Ohio St. 2d 11; *State* v. *Lynn,* 5 Ohio St. 2d 106.

It is apparent from an examination of the above instruction that it may, and almost certainly will, be understood to require a defendant, himself, to "satisfactorily explain" his conduct in fleeing the scene of a crime, and a conscientious juror, intent upon following the law as the court gives it to him, will consequently construe the continuing silence of a defendant as a failure to so satisfactorily explain his conduct in fleeing the scene and, therefore, is to be considered by him as a "circumstance together with all the other facts and circumstances in the case in determining the guilt or innocence" of the defendant.

Nor does it cure the defect of this charge to point out, as the state argues, that a defendant may meet this test by a satisfactory explanation of his flight through someone other than himself, while preserving his own right to remain silent. Unfortunately, this is not the only, or even the plain meaning of the charge. The plain mean-

ing is that the *defendant* shall explain the circumstance, not someone else. If there is another subtler reading of the words, we cannot depend upon or require the jury to make it.

This court has previously held in its decision in *State v. Johnson,* No. 11633, decided December 20, 1971, under virtually identical facts, that:

"No burden can be placed upon the defendant to explain his actions, and therefore any instruction by the trial court which has the net effect of requiring a defendant to make an explanation is improper."

We reaffirm that decision today and hold, therefore, that defendant's first assignment of error is well taken.

Accordingly, the judgment of the Court of Common Pleas of Hamilton County is reversed, and the cause is remanded for a new trial.

*Judgment reversed and cause remanded.*

HESS, P. J., and SHANNON, J., concur.