This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Appellant, John A. Lavery, has appealed from the order of the Summit County Court of Common Pleas, Juvenile Division, that adjudicated him a delinquent child by reason of domestic violence. We affirm.
Marjory S. Lavery ("Marjory"), Appellant's sister, filed a complaint alleging that Appellant was delinquent because he committed domestic violence, in violation of R.C. 2919.25(C). The trial court adjudicated Appellant a delinquent child by reason of domestic violence. The court ordered that Appellant pay court costs, undergo an assessment and receive appropriate treatment from Akron Guidance Center. Further, the court ordered that Appellant pay a fine, which it would suspend upon Appellant's successful completion of the treatment program. Appellant timely appealed raising four assignments of error for review.
 ASSIGNMENT OF ERROR I The trial court erred by finding [Appellant] delinquent as said decision is against the manifest weight of the evidence.
In Appellant's first assignment of error, he argues that the trial court's decision was against the manifest weight of the evidence. We disagree.
A juvenile court proceeding is a civil action. In re Anderson (2001),92 Ohio St.3d 63, 64. When evaluating whether a judgment is against the manifest weight of the evidence in a civil context, the standard of review is the same as that in the criminal context. Frederick v. Born
(Aug. 21, 1996), Lorain App. No. 95CA006286, unreported, at 14. In determining whether a criminal conviction is against the manifest weight of the evidence:
 [t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.
State v. Thompkins (1997), 78 Ohio St.3d 380, 387, quoting State v.Martin (1983), 20 Ohio App.3d 172, 175; see, also, State v. Otten
(1986), 33 Ohio App.3d 339, 340. Accordingly, before an appellate court will reverse a judgment as against the manifest weight of the evidence in a civil context, the court must determine whether the trier of fact, in resolving evidentiary conflicts and making credibility determinations, clearly lost its way and created a manifest miscarriage of justice.
The trial court adjudicated Appellant a delinquent child by reason of committing domestic violence in violation of R.C. 2919.25(C), which states as follows: "No person, by threat of force, shall knowingly cause a family or household member to believe that the offender will cause imminent physical harm to the family or household member." The sister of an accused who has resided with the accused is a family or household member. R.C. 2919.25(E)(1)(a)(ii).
It should be noted at the outset that in a bench trial, the trial court judge, as the trier of fact, determines the credibility of witnesses and the weight to be given the evidence. State v. Walker (1985),26 Ohio App.3d 29, 32. We are cognizant that the trial court is better situated than this court to view the witnesses and observe their demeanor, gestures and voice inflections, and make use of those observations in weighing their credibility. See Myers v. Garson (1993),66 Ohio St.3d 610, 615.
In the instant case, Marjory, the alleged victim, testified that on the evening in question she accompanied her younger sister, Kathleen, to a local school to observe a district spelling bee competition. Marjory's testimony indicated that while they were at the school, Marjory encountered her older sister, Mary, and an altercation ensued. During the altercation, Kathleen became upset and fled. Following the incident with Mary, Marjory left the building in order to locate Kathleen. Marjory stated that she subsequently returned to the school to continue her search for Kathleen.
Upon reentering the building Marjory saw her father, Thomas Lavery ("Mr. Lavery"), and Appellant walking toward her in the hallway among a group of others departing from the school. Marjory testified that as she approached her father and Appellant, she and her father exchanged words. She stated that Appellant then approached her and placed his left hand on her throat, pushing her back toward the wall, after which she said "How can you do that? This is assault." Marjory testified that Appellant had a video camera tripod in his right hand, which he lifted in the air and said, "I'll show you what assault is." She stated that she thought Appellant was going to hit her with the tripod and that she felt scared that he would seriously hurt her. Thereafter, Appellant lowered the tripod and exited the building with his father. Following the incident, Marjory located Kathleen, took her to her grandmother's house, returned home and called the police. When the police arrived Marjory reported the altercations between herself and Mary and Appellant.
Officer Vincent Tassiello testified that he took Marjory's statement. He stated that he saw no injuries on Marjory. He also testified that Marjory told him that a physical altercation had occurred between herself and Appellant.
Caroline Smith, an employee of Area Wide Security Company, was providing security at the spelling bee. She testified that she did not witness the altercation between Marjory and Appellant. She also stated that no one reported an assault to her on that evening.
Donna-Marie Smith, a secretary for the Akron Public Schools, testified that she was providing crowd control during the spelling bee. She stated that she did not witness the altercation between Marjory and Appellant. Smith testified that after the alleged incident with Appellant, Marjory reported to Smith that she and Mr. Lavery had exchanged words in the parking lot. She also stated that Marjory did not advise her that she had been assaulted by Appellant.
Mary, the sister of Appellant and Marjory, also testified. Mary stated that she attended the spelling bee "to try to keep the peace" because she "was afraid that somebody might do something to hurt the other one." She also testified that she did not witness the altercation between Marjory and Appellant.
Mr. Lavery testified that he attended the spelling bee with Appellant in order to teach Appellant how to operate the video camera. He stated that he wanted Appellant to videotape Kathleen's participation in an upcoming spelling bee at the same location because he was afraid that "somebody would pull some kind of a stunt to try to keep [him] away from it." Mr. Lavery wanted to be sure the event was recorded.
Mr. Lavery described walking down the hallway after the completion of the competition in order to exit the building. He stated he and Appellant were walking out with a crowd of approximately twelve others, when he noticed Marjory walking toward them in the hallway. Mr. Lavery testified that Marjory "made a face" at him and he "made a face back at her[.]" Further, he stated that Marjory approached him and started yelling, to which he did not respond. Mr. Lavery explained that Appellant stepped between them and Marjory yelled, "That's assault." He stated that Marjory and Appellant were "belly to belly" but that Appellant did not touch Marjory nor raise the tripod he was carrying. Mr. Lavery testified that Appellant only mumbled something to Marjory under his breath.
After considering the testimony, the trial court concluded that Marjory's testimony was quite credible based on her demeanor and coherent testimony. It also found that the testimony of Mr. Lavery was not credible due to his nonresponsiveness and agitated demeanor. We cannot find that Appellant's adjudication is against the manifest weight of the evidence. The testimony demonstrated that Marjory felt threatened and scared when her brother, Appellant, put his hand on her neck, pushed her toward the wall, and raised the tripod above his head. This evidence, coupled with the trial court's rejection of Mr. Lavery's testimony as not credible, clearly supports the trial court's adjudication of Appellant as delinquent based on domestic violence.
 ASSIGNMENT OF ERROR II The trial court erred by denying [Appellant] a fair trial from an impartial trier of fact.
Appellant contends in his second assignment of error that the trial court denied him a fair trial when it allegedly considered facts not in evidence. Appellant's contention is without merit.
Appellant points to the following remarks by the trial court as support for his assignment of error:
 [T]here was a threat of force, and then we had Marjory's testimony that she believed her brother would cause her harm, could cause her harm and that it was imminent. Again, I find that fear reasonable based on the history in this family and the tensions between them, the family members as well as the actual physical act.
Specifically, Appellant maintains that there was no evidence in the record to support a troubled "history in this family" or "tensions between them[.]"
Contrary to Appellant's argument, the record contains numerous references to the turbulent history of the family and the tensions between the family members. For example, Marjory testified that when she and Kathleen arrived at the spelling bee, Kathleen became very upset and began to cry when she discovered that Mr. Lavery was also present. Marjory further explained that she was afraid that Mr. Lavery would "cause a problem with Kathleen, frighten her, or yell at either Kathleen or [Marjory], possibly start something, a physical fight, and [Marjory] wanted to keep Kathleen safe from that." She testified that she lived in constant fear of Mr. Lavery. She also stated that there was a no contact order between her and Mr. Lavery and between Kathleen and Mr. Lavery. Further, Marjory described a physical altercation that she had with her sister Mary that evening.
Mary testified that she attended the spelling bee in order to "keep the peace" because she thought an argument would ensue between Marjory, Kathleen, and Mr. Lavery. During Mr. Lavery's testimony, he admitted that Marjory was going to testify against him in a pending case where he faced felony charges of child endangering. He also stated that the prosecutor had threatened him with arrest if he attended Kathleen's spelling bee, scheduled for two days later.
After a careful review of the record, we find that the trial court's comments were fairly based on the testimony presented. Accordingly, Appellant's second assignment of error is overruled.
 ASSIGNMENT OF ERROR III The trial court erred by commenting on [Appellant's] failure to testify in his own defense.
In his third assignment of error, Appellant maintains that the trial court erroneously commented on Appellant's failure to testify in this case. We disagree.
It is well established that a prosecutor or judge cannot comment on or call the jury's attention to the failure of an accused to testify on his own behalf. Griffin v. California (1965), 380 U.S. 609, 615,14 L.Ed.2d 106, 110; State v. Fields (1973), 35 Ohio App.2d 140, 145. This prohibition implements the constitutional privilege against self-incrimination. Griffin, 380 U.S. at 615, 14 L.Ed.2d at 110. In a trial to the bench, it is presumed that the court considered only relevant, material and competent evidence in reaching its judgment. Statev. White (1968), 15 Ohio St.2d 146, 151.
In the instant case, at the conclusion of the proceedings, the trial court rendered its decision where it commented as follows:
 Finally, I would say that we didn't hear from [Appellant] himself, and of course, that is his right not to testify, and [Appellant's attorney] is perfectly right in saying that it is the state's burden to prove the elements of the offense. [Appellant] has the presumption of innocence.
Appellant contends that these comments demonstrate that the trial court erroneously considered Appellant's failure to testify when it rendered its decision on this matter.
We note that these comments were not made to a jury which could draw an adverse conclusion therefrom to Appellant's detriment, or violate Appellant's constitutional right against self-incrimination. If the statement meant anything, directed as it was to the parties while the judge was rendering her decision at the conclusion of the proceedings, it was directed solely to reinforce Appellant's right to remain silent and free from danger by reason of that silence.
Accordingly, Appellant's third assignment of error is overruled.
 ASSIGNMENT OF ERROR IV The trial court erred by quashing [Appellant's] subpoena of Eduardo Coronado.
In Appellant's final assignment of error, he avers that the trial court erred in quashing the subpoena for the testimony of Eduardo Coronado ("Coronado"). Appellant's argument is without merit.
This Court reviews a trial court's disposition of a motion to quash a subpoena for an abuse of discretion. Lampe v. Ford Motor Co. (Jan. 19, 2000), Summit App. No. 19388, unreported, at 6, citing State ex rel. TheV Cos. v. Marshall (1998), 81 Ohio St.3d 467, 469. To abuse its discretion, "the result must be so palpably and grossly violative of fact or logic that it evidences not the exercise of will but the perversity of will, not the exercise of judgment but the defiance of judgment, not the exercise of reason but instead passion or bias." Nakoff v. Fairview Gen.Hosp. (1996), 75 Ohio St.3d 254, 256.
The Sixth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution provide an accused with a right of compulsory process to obtain a witness's testimony. Pennsylvania v.Ritchie (1987), 480 U.S. 39, 56, 94 L.Ed.2d 40, 56; Columbus v. Cooper
(1990), 49 Ohio St.3d 42, 44. However, an accused's constitutional right of compulsory process is limited by the rules of evidence. State v.Denis (1997), 117 Ohio App.3d 442, 446. Therefore, the right to call witnesses on one's behalf is limited by the requirement that the evidence sought to be presented be relevant. Evid.R. 401.
Where a trial court excludes evidence sought to be presented in a party's case-in-chief, that party is required to make an offer of proof. Evid.R. 103(A)(2) provides as follows:
 (A) Effect of erroneous ruling. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and:
* * *
 (2) Offer of proof. In case the ruling is one excluding evidence, the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked. Offer of proof is not necessary if evidence is excluded during cross-examination.
(Emphasis sic.).
"Generally, an offer of proof consists of two elements. First, the offering party must inform the trial court as to the legal theory upon which admissibility is proposed. Second, an offering party must show what a witness was expected to testify to and what that evidence would have proven or tended to have proven." Moser v. Moser (1991), 72 Ohio App.3d 575,580. The proffer does not need to be as specific as the testimony itself would have been; however, it must be sufficient to allow the reviewing court to roughly determine what impact the testimony would have had upon the final disposition of the case. Id.
Appellant presented Coronado's testimony by way of proffer. Coronado would have testified that he commenced a romantic relationship with Marjory when she was 16-years-old. He would have stated that he was a law student with experience in criminal law matters and that he was present when Marjory gave her statement to police regarding the incident in question. Further, Appellant proffered that had Coronado testified, Appellant would have questioned him with regard to statements that Marjory made to him about the incident.
Appellant also proffered that had he been allowed to cross-examine Mr. Lavery with regard to Coronado, Mr. Lavery would have testified that he disapproved of Marjory's relationship with him and that Mr. Lavery instructed her to terminate the relationship or he would press charges. Also, Mr. Lavery would have testified that Marjory told him that "she would make trouble for him if he attempted to break up [the] relationship."
Finally, in his proffer, Appellant generally maintained that such extrinsic evidence would be admissible to show that Marjory had a motive to fabricate or was biased. Essentially, Appellant argued that Coronado's testimony would have allowed him to test Marjory's credibility, since it demonstrated her bias toward her father. This court notes that on appeal Appellant has not raised as error his inability to cross-examine Mr. Lavery about Marjory's relationship with Coronado. Therefore, we will address only the impact that Coronado's testimony would have had upon the final disposition of the case.
In United States v. Abel (1984), 469 U.S. 45, 83 L.Ed.2d 450, the Court explained that "bias" is a term used in the law to describe therelationship between a party and a witness which might cause the witness to slant or alter her testimony in favor of against the party. (Emphasis added). Id. at 52, 83 L.Ed.2d at 457. "Bias may be induced by a witness' like, dislike, or fear of a party, or by the witness' self-interest. Proof of bias is almost always relevant because the [trier of fact] and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony." Id.
After a thorough review of the proffered testimony, we find that it has no relevance to Appellant's domestic violence charge. Coronado's testimony would not have been evidence of bias. Specifically, the proffer did not indicate how Coronado's testimony was relevant to the relationship between Marjory, the prosecuting witness, and Appellant, the party. Further, the proffer does not demonstrate how that relationship might have led Marjory to slant or fabricate her testimony against Appellant. Rather, the proffered testimony demonstrated that Marjory had a poor relationship with her father, who was not a party to this action. Therefore, the trial court did not abuse its discretion in quashing the subpoena in question. Appellant's fourth assignment of error is overruled.
Appellant's four assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
BAIRD, P.J., WHITMORE, J. CONCUR.