DECISION AND JUDGMENT ENTRY
{¶ 1} Defendant-appellant, Donald Germany, appeals the February 20, 2007 judgment of the Lucas County Court of Common Pleas which, following a jury trial convicting him of felonious assault with a firearm specification, sentenced appellant to a total of 11 years of imprisonment. For the reasons that follow, we affirm the trial court's judgment. *Page 2 
 {¶ 2} On November 9, 2006, appellant was indicted on one count of felonious assault, in violation of R.C. 2903.11(A)(2), a second degree felony. The charge included a firearm specification, R.C. 2941.145. The indictment stemmed from the July 23, 2006 shooting of William Moore. On November 22, 2006, appellant entered a not guilty plea.
 {¶ 3} On December 8, 2006, appellant filed a motion to suppress the out-of-court identification of appellant by victim, Moore. Appellant argued that the photo array was unduly suggestive and that the procedures conducted by police with regard to the identification were improper. Following a hearing on January 18, 2007, the trial court denied the motion.
 {¶ 4} On February 12, 2007, the case proceeded to trial. A brief summary of the evidence presented is as follows. The victim, William Moore, testified that on July 23, 2006, he went to Big Shots Bar where he consumed four to five vodka mixed drinks. Moore testified that he is about six feet tall and, in July 2006, weighed 255 pounds. At about 2:30 a.m., the bar was closing and he decided to go to an after-hours nightclub called "The Wash" (the club was located in a car wash.) Moore agreed to give his friend, Joseph Hinton, a ride to the club; The Wash was only a five-minute car ride and was located in Toledo, Lucas County, Ohio.
 {¶ 5} Moore testified that prior to leaving Big Shots, he observed a verbal altercation between Hinton and appellant in the parking lot. Moore did not know appellant. Moore testified that he could not hear what they were arguing about. *Page 3 
 {¶ 6} Moore and Hinton proceeded to the after-hours club. When they arrived, they parked along the side of the building and sat in the car for a few minutes. Moore testified that upon exiting the vehicle, he saw appellant standing seven to eight feet away with a sawed-off shotgun in his hand. Moore stated that appellant shot him in his abdomen and chest.
 {¶ 7} Moore testified that at the hospital he was kept in a medically-induced coma for a few weeks following the shooting. He stated that he was awake and alert from August 5, 2006 on, but that he could not speak due to a tracheotomy and that he could not write. Moore testified that on August 8, 2006, Toledo Police Detective William Seymour came to the hospital and showed him a photo array. Moore testified that he identified appellant as the shooter and that he was 100 percent positive the he correctly identified the shooter.
 {¶ 8} Joseph Hinton testified that in the Big Shots parking lot he argued with appellant about an alleged $5 gambling debt that Hinton owed. The debt was incurred when the two had been working a construction job in Michigan. Hinton stated that appellant threatened him.
 {¶ 9} When he and Moore arrived at The Wash, they sat in the car for a few minutes waiting for Moore's girlfriend to arrive. Hinton exited the vehicle and walked around the back; he heard a gunshot. When Hinton rounded the vehicle he saw appellant with a shotgun and Moore holding his chest. Hinton stated that he helped Moore into the bar; once inside, Moore fell to the floor. *Page 4 
 {¶ 10} Hinton testified that he used his cell phone to call Anthony Smith, a friend who had also been at Big Shots. He then called 9-1-1. Hinton testified that he was positive that appellant shot Moore.
 {¶ 11} Anthony Smith testified that he had also worked with appellant and was at the hotel in Michigan where he and Hinton lost $5 bets to appellant. According to Smith, appellant told him that he did not have to pay the money; however, appellant insisted that Hinton pay the debt. On July 23, 2006, in the Big Shots parking lot, Smith saw appellant and Hinton arguing over the debt. Smith testified that appellant threatened Hinton.
 {¶ 12} Smith testified that approximately two to three weeks after the shooting, appellant telephoned him and stated that he meant to shoot Hinton, not Moore. Smith contacted the police about the phone call.
 {¶ 13} Appellant's mother, Angela Hardiman, testified that appellant was in Indianapolis, Indiana on the date of the shooting. Hardiman testified that her family is from Indianapolis and that appellant has two sons that live there. Hardiman admitted that she did not tell police that appellant was in Indianapolis, she stated that the police found him on their own.
 {¶ 14} At the conclusion of the evidence, the jury convicted appellant of felonious assault with a firearm. Thereafter, he was sentenced to a total of 11 years of imprisonment. This appeal followed. *Page 5 
 {¶ 15} Appellant now raises the following four assignment of error for our review:
 {¶ 16} "I. The trial court erred in allowing testimony of a prosecution witness as the prosecution failed to disclose the witness's address as required pursuant to Criminal Rule 16 thereby violating defendant's right to due process as guaranteed by the 14th Amendment to the United States Constitution.
 {¶ 17} "II. The court erred in not suppressing the out of court identification of defendant made by the state witness William Moore.
 {¶ 18} "III. The trial court erred in giving a `flight' instruction to the jury as it placed an undue burden upon defendant in violation of the5th and 14th Amendments to the United States Constitution.
 {¶ 19} "IV. The trial court erred in sentencing defendant to the maximum sentence."
 {¶ 20} In appellant's first assignment of error he argues that the state, in violation of Crim.R. 16, failed to provide the correct address of witness Anthony Smith. Crim.R. 16(B)(1)(e) provides:
 {¶ 21} "(e) Witness names and addresses; record. Upon motion of the defendant, the court shall order the prosecuting attorney to furnish to the defendant a written list of the names and addresses of all witnesses whom the prosecuting attorney intends to call at trial, together with any record of prior felony convictions of any such witness, which record is within the knowledge of the prosecuting attorney. Names and addresses of witnesses shall not be subject to disclosure if the prosecuting attorney certifies to the *Page 6 
court that to do so may subject the witness or others to physical or substantial economic harm or coercion. Where a motion for discovery of the names and addresses of witnesses has been made by a defendant, the prosecuting attorney may move the court to perpetuate the testimony of such witnesses in a hearing before the court, in which hearing the defendant shall have the right of cross-examination. A record of the witness' testimony shall be made and shall be admissible at trial as part of the state's case in chief, in the event the witness has become unavailable through no fault of the state."
 {¶ 22} Appellant argues that he "had absolutely no access to [Smith] because Defendant was never supplied with the witness's appropriate address." Appellant contends that Smith's testimony regarding the alleged telephone conversation between he and appellant was highly prejudicial and a surprise. During cross-examination of Smith, the following testimony was presented:
 {¶ 23} "Q: What's your address, Mr. Smith?
 {¶ 24} "A: 1231 Lincoln.
 {¶ 25} "Q: 1231 what?
 {¶ 26} "A: Lincoln.
 {¶ 27} "Q: How long have you lived there?
 {¶ 28} "A: A few years.
 {¶ 29} "* * *.
 {¶ 30} "Q: And what address did you provide the prosecutor?
 {¶ 31} "A: Probably 1448 Goodale. *Page 7 
 {¶ 32} "Q: 1448 Goodale?
 {¶ 33} "A: Yeah.
 {¶ 34} "Q: How long did you live there?
 {¶ 35} "A: That's the house where I was raised at.
 {¶ 36} "Q: Okay. But you don't live there now.
 {¶ 37} "A: No.
 {¶ 38} "Q: All right.
 {¶ 39} "A: That's the house — my family still stay there."
 {¶ 40} Upon review of Crim.R. 16 and the testimony presented at trial, we cannot say that the state violated the rule by failing to provide appellant with Smith's address. Smith testified that he gave the state his former address; thus, the state did not have the Lincoln address. Further, Smith stated that his family still resided at the Goodale address. Appellant contends that he had "absolutely no access to this witness" despite having the address of Smith's family's home. Accordingly, we find that the state did not fail to provide Smith's address as required under Crim.R. 16(B)(1)(e).
 {¶ 41} Although not specifically raised in his assignment of error, appellant eludes to the fact that Smith's testimony regarding the telephone conversation between him and appellant should have been discoverable under Crim.R. 16(B)(1)(a). The state contends that appellant's alleged statement to Smith does not fit within the categories of statements requiring disclosure. *Page 8 
 {¶ 42} Crim.R. 16(B)(1)(a) provides that the following information is subject to disclosure:
 {¶ 43} "(a) Statement of defendant or co-defendant. Upon motion of the defendant, the court shall order the prosecuting attorney to permit the defendant to inspect and copy or photograph any of the following which are available to, or within the possession, custody, or control of the state, the existence of which is known or by the exercise of due diligence may become known to the prosecuting attorney:
 {¶ 44} "(i) Relevant written or recorded statements made by the defendant or co-defendant, or copies thereof;
 {¶ 45} "(ii) Written summaries of any oral statement, or copies thereof, made by the defendant or co-defendant to a prosecuting attorney or any law enforcement officer;
 {¶ 46} "(iii) Recorded testimony of the defendant or co-defendant before a grand jury."
 {¶ 47} We agree with the state that appellant's oral statement to Smith, who is not a law enforcement officer, does not fit within any of the above-quoted categories. The issue of whether an inculpatory statement made by the defendant to a third party is discoverable under Crim.R. 16 was addressed in State v. Collier (Feb. 18, 1997), 12th Dist. No. CA96-03-059. In Collier, the court determined that because the statement was not written or recorded, and because the statement was not made to a law enforcement officer, the statement was not discoverable under Crim.R. 16. Id., citing State v. Daniel (July 22, 1983), 3d Dist. No, 1-82-5. In making its determination, the Collier court *Page 9 
expressed its concern that such a holding may encourage abuse by the state. We, too, are aware of the potential for abuse; however, under the facts of this case, we find that there is no evidence to suggest that the state purposely withheld evidence from appellant. Accordingly, we find that appellant's first assignment of error is not well-taken.
 {¶ 48} In appellant's second assignment of error, he argues that the trial court erred by failing to grant his motion to suppress the out-of-court identification of appellant by William Moore. Specifically, appellant contends that the photo array was unduly suggestive and that Moore was in a "vulnerable" state having been awake from a medically induced coma for only a few days and under the influence of pain medication.
 {¶ 49} "When a witness has been confronted with a suspect before trial, due process requires a court to suppress her identification of the suspect if the confrontation was unnecessarily suggestive of the suspect's guilt and the identification was unreliable under all the circumstances." State v. Waddy (1992), 63 Ohio St.3d 424, 438, citingNeil v. Biggers (1972), 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401.
 {¶ 50} Thus, the two-part test is whether the identification is: (1) unduly suggestive, and (2) unreliable. Id. To determine whether the identification is unreliable, the court should consider the following factors:
 {¶ 51} "the witness's opportunity to view * * * the defendant during the crime, the witness's degree of attention, the accuracy of the witness's prior description of the suspect, the witness's certainty, and the time elapsed between the crime and the identification." Id. at 439, citing Neil, 409 U.S. at 199-200. The Ohio Supreme Court *Page 10 
added that an identification is unreliable where suggestive procedures created "`a very substantial likelihood of irreparable misidentification.'" Id. at 439, quoting Simmons v. United States
(1968), 390 U.S. 377, 384, 88 S.Ct. 967, 971, 34 L.Ed.2d 1247, 1253.
 {¶ 52} In the present case, the first question is whether the identification was suggestive. On its face, the photo array contains six pictures of African American men with similar facial features and similar skin tone. In the array, we agree that the photo of appellant is somewhat different in that appellant's head is tilted and you can see a bit more of appellant's clothing. However, there was testimony that the photo array was not presented to Moore in any way that would indicate that he should pick appellant. In sum, we find that the photo array was not suggestive.
 {¶ 53} Even assuming that the photo array was suggestive, the inquiry does not end there. There must also be evidence that the identification was unreliable. First, we are to consider Moore's opportunity to view the shooter and the level of attention he paid to the shooter. Moore testified that the he looked directly at the shooter who stood only seven to eight feet away. Courts have found identifications reliable even when the witnesses saw their assailants for only a few seconds. In one case, the victim reported seeing her assailant for a "`brief second, might have been a little more than a brief second.'" State v.Norton (July 29, 1993), Tenth Dist. No. 93AP-194. Similarly, where a witness saw the assailant for "several seconds, in broad daylight, from approximately twelve feet away," the court found the identification reliable. State v. Mitchell (Nov. 15, 1995), Ninth Dist. No. 17029. *Page 11 
 {¶ 54} We are also to consider Moore's certainty in identifying the robber in the photo array. Moore was "a hundred percent" certain that appellant was the shooter, and did not hesitate in identifying him. Appellant argues that Moore was "vulnerable" due to the medication he was taking; Moore's mother testified that he had been awake and cognizant for three days prior to the identification. Upon review of the testimony presented at the suppression hearing, we find no evidence that appellant's ability to identify the shooter was compromised.
 {¶ 55} Finally, we are to consider the amount of time that elapsed between the shooting and the identification. Here, approximately two weeks had elapsed. The Ohio Supreme Court did not find an identification unreliable where two months had elapsed, noting that in Neil, the United States Supreme Court found that "factors favoring reliability outweighed a seven-month gap." Waddy, 63 Ohio St.3d at 440, citing Neil,409 U.S. at 198.
 {¶ 56} Viewing the record as a whole, we find that although the photo of appellant was slightly different, the array itself and the presentation of the array were not unduly suggestive. Detective Seymour did nothing to influence Moore's identification. Moore did not hesitate in picking appellant's photo out of the photo array, and he was very certain that appellant was the shooter. Accordingly, because the photo array was not unduly suggestive and Moore's identification was reliable, the trial court did not err when it denied appellant's motion to suppress. Appellant's second assignment of error is not well-taken. *Page 12 
 {¶ 57} Appellant's third assignment of error contends that the trial court erred when it instructed the jury on appellant's alleged "flight" or attempt to avoid prosecution. Specifically, appellant argues that by giving the flight instruction, the trial court improperly shifted the burden of proof to appellant to demonstrate that the evidence presented was not evidence of flight.
 {¶ 58} Out of the presence of the jury, the court considered the state's request to instruct the jury on flight. Defense counsel objected. The court noted that testimony was presented that appellant was in Indianapolis when he was at a job in Toledo. The trial court then instructed the jury as follows:
 {¶ 59} "Testimony has been provided by the State that the defendant fled or attempted to avoid prosecution after committing the offense alleged in the indictment. This evidence has been presented by the State for the very limited purpose of showing consciousness of guilt on the part of the defendant for the purpose of showing his guilt. It was not received and you may not consider it for any other purpose.
 {¶ 60} "In considering this evidence you will decide whether the testimony of the defendant's conduct is true. If you find that it is true, you should consider that there may be other innocent reasons to explain the defendant's conduct. If you find the testimony is true, and you find that the defendant's conduct was not motivated by consciousness of guilt or if you are unable to determine whether the defendant's motivation — what the defendant's motivation was, you should not consider the evidence for any purpose. *Page 13 
 {¶ 61} "However, if you find the testimony is true and you find the defendant's conduct was motivated by consciousness of guilt, you may consider that evidence in determining whether or not the defendant is guilty of the offense charged. You will determine what weight, if any, to be given to this evidence."
 {¶ 62} Appellant argues that the above-quoted instruction of flight placed an unconstitutional burden on him to explain why he was in Indiana. Appellant contends that such a burden violates his Fifth andFourteenth Amendment right not to testify. We first note that a determination as to which jury instructions are proper is a matter left to the sound discretion of the trial court. State v. Guster (1981), 66 Ohio St.2d 266, 271.
 {¶ 63} In support of appellant's argument, he cites the First Appellate District's case captioned State v. Fields (1973),35 Ohio App.2d 140. In Fields, the trial court instructed the jury in a burglary trial as follows:
 {¶ 64} "`Now, in this case, there is evidence tending to indicate that both of the defendants fled from the vicinity of the alleged crime. In this connection, you are instructed that flight in and of itself does not raise a presumption of guilt, but unless satisfactorilyexplained, it tends to show consciousness of guilt or a guilty connection with the crime. If, therefore, you find that one or both of the defendants did flee from the scene of the alleged crime, and one orboth have not satisfactorily explained their conduct in so doing, you may consider this circumstance together with all other facts and circumstances in the case in determining the guilt or innocence of one or both of the defendants.' (Emphasis ours.)" Id. at 144-145. *Page 14 
 {¶ 65} The Fields court found that the flight instruction violated the defendant's constitutional rights because it would be understood by the jurors to require the defendant to personally explain why he fled the scene. Id. at 145-146. In the present case, the instruction did not require appellant to personally explain his flight. Moreover, the trial court instructed the jury on appellant's right not to testify. Finally, the court instructed the jury that they were to determine whether the flight evidence was true and then determine the weight, is any, to give the evidence. Such an instruction is consistent with the jury's role of determining the credibility of witnesses. Based on the foregoing, we find that the trial court did not abuse its discretion when it instructed the jury on appellant's alleged flight. Appellant's third assignment of error is not well-taken.
 {¶ 66} In appellant's fourth and final assignment of error he argues that the trial court abused its discretion in sentencing appellant to a maximum sentence. Appellant contends that the court "ignored" the recommendation of the prosecutor for a ten-year total sentence and that the victim had completely recovered from his injuries. This court has carefully read the record in this case and, based upon the nature of the injuries sustained by victim Moore, we cannot say that the trial court abused its discretion when it sentenced appellant to a maximum sentence. Moore, for seemingly no reason, was shot at close range with a sawed-off shotgun. He spent a month in the hospital with life-threatening injuries. Appellant's fourth assignment of error is not well-taken.
 {¶ 67} On consideration whereof, we find that appellant was not prejudiced or prevented from having a fair trial and the judgment of the Lucas County Court of *Page 15 
Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.
Peter M. Handwork, J., Mark L. Pietrykowski, P.J., Thomas J. Osowik, J., Concur. *Page 1