JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Defendant-appellant Darnell Nash appeals from a judgment of conviction on one count of grand theft motor vehicle, two counts of failure to comply with an order or signal of a police officer, and one count of receiving stolen property. Appellant raises three assignments of error for our review asserting that there was insufficient evidence to support the convictions; the convictions were against the manifest weight of the evidence; and the jury instruction on flight violated his constitutional right to remain silent. Finding no merit to these assignments, we affirm.
 {¶ 2} The facts show that on November 13, 2006, a 2006 Toyota Solara with Wisconsin license plates was stolen from the Hertz rental car lot at Cleveland Hopkins Airport. Three Hertz employees identified appellant as being on the lot on that date at the time the car was stolen. Two of the employees testified that they saw appellant get into the car and drive it out of the lot. All three stated they recognized appellant from a company security poster that was hanging on the wall in the break room and the manager's office, which showed appellant's name, description, and photograph. Security cameras on the Hertz lot captured images of the car driving around the security gate and exiting without stopping for the guard.
 {¶ 3} Cleveland detectives Hall and Curry testified to the events that occurred on November 17, 2006 leading to appellant's arrest and the recovery of the stolen car. They stated that on that date they had obtained an arrest warrant for appellant *Page 4 
in connection with the theft. While driving in an unmarked Ford Expedition, they saw appellant drive by in the stolen Toyota Solara. The detectives verified that it was the stolen car and then called for assistance from a marked zone car. The zone car activated its lights and sirens, and pulled appellant over. The detectives activated the blue lights on their unmarked car and pulled alongside appellant who suddenly took off at a high rate of speed. Detective Hall testified that he was familiar with appellant from previous criminal cases.
 {¶ 4} The detectives stated that after a high speed chase through the neighborhood streets in the Kinsman-East 128th Street area, appellant failed to negotiate a left turn and crashed into some bushes next to a house. Appellant fled from the car and was apprehended in the back yard of the house by one of the police officers from the zone car.
 {¶ 5} Appellant took the stand in his own defense. He stated that he worked as an escort and sometimes traded sex for money. He denied being at the Hertz lot on November 13, 2006. He admitted to driving the Toyota Solara on that date but insisted one of his clients gave him the car to use. He stated the client was a Hertz employee who sometimes gave him use of cars in exchange for sex. He knew the client only as "Scott" and could not identify the makes or models of any of the other cars Scott had allowed him to use.
 {¶ 6} Appellant said that he thought the Ford Expedition was trying to run him off the road and that he thought the police car was pulling the Expedition over. He *Page 5 
pulled into a driveway and got out of the car and ran because he saw a man jump out of the Expedition and come at him and he was afraid. He did not know the man was a police officer. He claimed Detective Hall chased him behind the house and he ran to the uniformed officer for help. He said the uniformed officer picked him up and threw him to the ground and punched him in the head. Then Detective Hall came up and kicked him. He said Detective Hall told him if he had caught him alone he would have shot him.
 {¶ 7} Appellant testified that while taking him to the police station in the zone car, the officer that hit him apologized for punching and kicking him. He said the officer also told him there was no way he could have known that they were trying to pull him over because they were behind the Ford Expedition.
 I {¶ 8} For his first assignment of error, appellant asserts that the evidence was insufficient to support the convictions for grand theft motor vehicle and receiving stolen property.
 {¶ 9} A sufficiency of the evidence argument challenges whether the state has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law. State v. Thompkins, 78 Ohio St.3d 380, 1997-Ohio-52. "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would *Page 6 
convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1981), 61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 10} R.C. 2913.02 provides: "No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services * * * without the consent of the owner or person authorized to give consent. * * * If the property stolen is a motor vehicle, a violation of this section is grand theft of a motor vehicle, a felony of the fourth degree."
 {¶ 11} Appellant's only challenge to the grand theft charge is that the state's evidence of the identity of the car thief was weak. He argues that since the driver of the vehicle could not be identified from the security tape, and the driver was not apprehended at the time of the theft, there was insufficient evidence that appellant was the person who took the car. We disagree.
 {¶ 12} The eyewitness testimony of the three Hertz employees puts appellant at the Hertz lot on November 13, 2006. Two of the witnesses saw appellant get behind the wheel of the Toyota Solara and drive it around the security gate and off the lot. The Hertz manager testified that appellant did not have permission to drive the car off the lot. Given this evidence, a rational trier of fact could have found the essential elements of grand theft motor vehicle proven beyond a reasonable doubt. *Page 7 
 {¶ 13} Appellant also challenges the evidence supporting his receiving stolen property conviction. R.C. 2913.51 states: "No person shall receive, retain, or dispose of property of another knowing or having reasonable cause to believe that the property has been obtained through commission of a theft offense."
 {¶ 14} Appellant argues that the state presented no direct evidence to prove he knew the car was obtained through the commission of a theft offense. He relies on his testimony that an employee at Hertz gave him the car to use as he had done on previous occasions and therefore he had no reason to believe the car was obtained through a theft offense.
 {¶ 15} Two Hertz employees identified appellant as the individual who drove a 2006 Toyota Solara with Wisconsin plates off the lot on November 13, 2006. They stated he drove around the security gate and over the "tiger teeth" security strip next to the security booth. They explained that the "teeth" on the metal strip go down when the security gate is raised by the guard. On November 17, 2006, appellant was apprehended by the police driving the stolen 2006 Toyota Solara with Wisconsin plates. The police testified that when they attempted to pull appellant over, he led them on a high-speed chase and then fled on foot. The police inventory of the car's contents revealed a shredded tire in the trunk of the car and a rental contract bearing the name "Scott Brady."[1] When viewed in a light most favorable to *Page 8 
the prosecution, the evidence is sufficient to prove that appellant knew, or reasonably should have known, that the car he was driving on November 17, 2006 was stolen.
 {¶ 16} Finding no merit to appellant's argument, we overrule his first assignment of error.
 II {¶ 17} For his second assignment of error, appellant asserts that all of the convictions were against the manifest weight of the evidence.
 {¶ 18} When reviewing a claim that a verdict is against the manifest weight of the evidence, we weigh the evidence and all the reasonable inferences, consider the credibility of the witnesses and, in considering conflicts in the evidence, determine whether the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v.Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. State v.Martin (1980), 20 Ohio App.3d 172, 175.
 {¶ 19} Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other." Thompkins, supra,78 Ohio St.3d at 387. Appellant argues that there *Page 9 
were two versions of the events testified to during trial and that the jury lost its way in deciding the case. We do not agree.
 {¶ 20} The state charged appellant with grand theft motor vehicle, receiving stolen property, and failure to comply with the order or signal of a police officer. As we noted above, the jury heard testimony from three eyewitnesses who placed appellant on the Hertz lot on the day the car was stolen. Two of the witnesses saw him in the car driving off the lot. The jury also heard appellant testify that he was not on the Hertz lot on the day the car was stolen. The jury heard testimony from two police detectives that appellant took off on a high speed chase when they and the zone car tried to pull him over. The detectives testified that the blue lights and flashing headlights on their unmarked car were activated. Both detectives stated that detective Curry had to turn the unmarked car away from the Solara to avoid being hit as appellant sped off. The jury heard appellant tell an entirely different version of the events. He said the unmarked car did not activate its lights. He said that he did not know the Expedition was a police vehicle. He said that the Expedition was between him and the police car and he thought the police were after the expedition. He said he did not crash into the bushes but pulled into a driveway. He said both detective Hall and one of the uniformed officers beat him.
 {¶ 21} The jury has the authority to "believe or disbelieve any witness or accept part of what a witness says and reject the rest."State v. Antill (1964), 176 Ohio St. 61, 67. The jury chose not to believe appellant's version of the events. We *Page 10 
do not find that the jury lost its way in finding appellant guilty of grand theft motor vehicle, receiving stolen property, and failure to comply with the order or signal of a police officer. There was sufficient, credible evidence to support the convictions. Appellant's second assignment of error is overruled.
 III {¶ 22} In his final assignment of error, appellant asserts that the trial court erred in giving the following flight instruction to the jury:
 {¶ 23} "You have heard testimony that the defendant fled the scene after being stopped by the police. You are instructed that flight in and of itself does not raise a presumption of guilt. However, unless satisfactorily explained, it may tend to show consciousness of guilt or a guilty connection to the crime."
 {¶ 24} Appellant argues that this instruction violated his constitutional right not to testify and placed an impermissible burden upon him to explain why he fled the scene. In support of this argument, he relies on State v. Fields (1973), 35 Ohio App.2d 140, and this court's decisions in State v. Williams (Dec. 17, 1992), Cuyahoga App. No. 61262 and State v. Harris (Apr. 10, 1986), Cuyahoga App. No. 50117. In Williams and Harris, this court reiterated that an instruction requiring a defendant to "satisfactorily explain" his flight violated the defendant's constitutional right not to testify
 {¶ 25} The instant case is distinguished from Fields, Williams, andHarris because in those cases the defendant exercised his constitutional right not to testify. *Page 11 
In State v. Taylor (1997), 78 Ohio St.3d 15, the Supreme Court of Ohio held that an almost identical jury instruction that "flight, in and of itself, does not raise a presumption of guilt, but unless satisfactorily explained, it tends to show consciousness of guilt or a guilty connection with the crime," did not improperly comment on defendant's silence or implicate his Fifth Amendment right not to testify. The court stated:
 {¶ 26} "Despite appellant's claims, this instruction on flight was neither arbitrary nor unreasonable, and did not create an improper mandatory presumption. `Flight from justice * * * may be indicative of a consciousness of guilt.' State v. Eaton (1969), 19 Ohio St. 2d 145,48 Ohio Op. 2d 188, 249 N.E.2d 897, paragraph six of the syllabus. AccordState v. Wilson (1988), 47 Ohio App. 3d 136, 140-141, 547 N.E.2d 1185,1188-1189; cf. State v. Strub (1975), 48 Ohio App. 2d 57, 63, 2 Ohio Op.3d 40,43, 355 N.E.2d 819, 824. Nor did the instruction improperly comment on appellant's silence, since he testified. See State v.Fields (1973), 35 Ohio App. 2d 140, 64 Ohio Op. 2d 248, 300 N.E.2d 207."
 {¶ 27} In the instant case appellant testified at trial in his defense, therefore, per the holding in Taylor, the instruction was not improper. Appellant's third assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
 The court finds there were reasonable grounds for this appeal. *Page 12 
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
ANN DYKE, J., and MARY J. BOYLE, J., CONCUR
[1] Mr. Brady is a Hertz-Gold customer who arrived to pick up his rental car shortly after the theft. *Page 1