DECISION AND JUDGMENT
{¶ 1} Appellant appeals his conviction for aggravated robbery with a firearm specification entered on a jury verdict in the Lucas County Court of Common Pleas. For the reasons that follow, we affirm. *Page 2 
 {¶ 2} On the morning of December 17, 2007, a 53-year-old Toledo woman visited a west side mall. She entered a multi-story parking garage next to a Macy's store and parked. As the woman exited her car, a second vehicle pulled behind her. A man emerged, rushing toward her, displaying the barrel of a gun and demanding that she turn over her purse. She later testified that when she hesitated, "* * * he came closer to me with the gun more pointed towards me and said more forcefully, `I said give me your purse.'" With this, the woman complied. The man took the purse, returned to his car and drove away.
 {¶ 3} As the robber left, the woman noted his license number, "repeating it over and over out loud as I ran to the store, so that I wouldn't forget it." From Macy's, she called mall security and police.
 {¶ 4} The woman described the man who robbed her as a young African-American male; slightly less than six feet tall with a medium build. He was dressed in dark blue or black and driving an older model dark blue car. The gun he displayed was chrome with a long barrel.
 {¶ 5} The following day, in unrelated activity, police arrested appellant, Rahbie R. Nicholson, on outstanding warrants. When taken into custody, appellant was carrying a loaded .357 Ruger pistol, chrome with a six inch barrel.
 {¶ 6} Suspecting that the gun might tie appellant to the mall robbery, police generated a photo array that included appellant's picture. Police showed the array to the *Page 3 
woman whose purse was taken. The woman identified appellant from the photo array as the man who robbed her.
 {¶ 7} A day later, police found a dark blue car bearing the license plate number provided by the mall victim. Inside the car were the woman's purse and its contents, including the woman's name tag from work.
 {¶ 8} Appellant was named in two separate indictments, the first charging him with aggravated robbery with a firearm specification and felonious assault with a firearm specification connected with the December 17 mall garage robbery. The second indictment charged appellant with carrying a concealed weapon, having a weapon under disability and receiving stolen property as a result of what was found during appellant's December 18 arrest. With respect to the later indictment, appellant eventually pled no contest and was found guilty on all three counts.[1]
 {¶ 9} Concerning the counts related to the December 17 mall robbery, appellant pled not guilty. After the court denied a defense motion to suppress the results of the photo array identification, the matter proceeded to trial before a jury. On March 27, 2008, the jury found appellant guilty of aggravated robbery with a firearm specification. The court accepted the verdict and sentenced appellant to a six-year term of incarceration, consecutive to a three-year term for the firearm specification and a four-year term for the December 18 offenses. *Page 4 
 {¶ 10} From this judgment, appellant not brings this appeal, setting forth the following seven assignments of error:
 {¶ 11} "Assignment of Error Number One: The photo array utilized by the State of Ohio was unduly suggestive and improper and further tainted any later identification violating the Appellant's Rights of Due Process of law.
 {¶ 12} "Assignment of Error Number Two: Comments made by the prosecuting attorney in his closing argument amounted to prosecutorial misconduct and violated the appellant's Fifth Amendment rights as guaranteed by the United States Constitution.
 {¶ 13} "Assignment of Error Number Three: The trial court erred in allowing the introduction of the firearm as 404(B) evidence.
 {¶ 14} "Assignment of Error Number Four: The state failed to prove all essential elements of the crime of Aggravated Robbery with a Firearm Specification.
 {¶ 15} "Assignment of Error Number Five: The State of Ohio failed to prove all essential elements of the crime of aggravated robbery with a firearm specification.
 {¶ 16} "Assignment of Error Number Five: The state of Ohio failed to provide sufficient evidence to support a conviction for Aggravated Robbery with a Firearm Specification.
 {¶ 17} "Assignment of Error Number Six: The conviction of the Appellant is contrary to the manifest weight of the evidence.
 {¶ 18} "Assignment of Error Number Seven: The indictment charging the Appellant is defective and fails to state the adequate mens rea." *Page 5 
 I. Photo Array {¶ 19} The officer who prepared the photo array for presentation to the mall robbery victim testified that in preparing the array he used the "four system." From a database of photos, he selected pictures of men of the same race as the suspect and within four years of age: two years older, two years younger; four inches of height: two inches taller, two inches shorter, and within 40 pounds of the suspects weight: 20 pounds heavier, 20 pounds lighter. Using pictures of individuals within this range, the officer selected six pictures for the witness to view.
 {¶ 20} In this instance, however, the officer included two poses from the same individual who was not appellant. As a result, appellant insists, the odds of the witness selecting any of the pictures at random was one in five, rather than the one in six ordinarily expected. The result of this, appellant argues, was a photo identification that was unduly suggestive and unreliable and should have been suppressed.
 {¶ 21} The state characterizes appellant's argument as "nonsense," pointing out that there is nothing in law mandating that a photo array contain a minimum number of pictures. Indeed, citing State v.Thomas, 8th Dist. No. 88548, 2007-Ohio-3552, ¶ 13, the state notes that it has been expressly held that a photo array containing five pictures is not suggestive.
 {¶ 22} As we recently noted in State v. Germany, 6th Dist. No. L-07-1087, 2008-Ohio-374, ¶ 49, due process requires the suppression of a pretrial identification of a suspect "`* * * if the confrontation was unnecessarily suggestive of the suspect's guilt and *Page 6 
the identification was unreliable under all the circumstances.'" Id., quoting State v. Waddy (1992), 63 Ohio St.3d 424, 438, citing Neil v.Biggers (1972), 409 U.S. 188. The test then is whether the identification was under circumstances that were unduly suggestive, resulting in an unreliable determination. Id. at ¶ 50. "The defendant must first show that the identification procedure was unduly suggestive. If the defendant meets that burden, the court must then consider whether the identification, viewed under the totality of the circumstances, is reliable despite the suggestive procedure." State v. Harris, 2d Dist. No. 19769, 2004-Ohio-3570, ¶ 19.
 {¶ 23} The cases do not clearly define a standard for what constitutes an "unduly suggestive" identification procedure, only that in considering this question the court should evaluate the totality of the circumstances. See Neil at 198. More emphasis is placed on whether, even in the presence of unduly suggestive procedures, the manner in which the photo array is created or presented, "* * * give[s] rise to a very substantial likelihood of irreparable misidentification." Simmons v.United States (1968), 390 U.S. 377, 384.
 {¶ 24} In determining whether an unreliable identification may result, a court is directed to examine, (1) the opportunity the witness had to view the defendant during the crime, (2) the degree of the witness's attention, (3) the accuracy of the witness's prior description of the suspect, (4) the witness's degree of certainty in the identification, and (5) the time elapsed between the crime and the identification.Waddy at ¶ 51. *Page 7 
 {¶ 25} Appellant insists that the use of only four other subjects in the photo array, coupled with the investigating officer's statement to the witness that she was "* * * not to feel bad if I was unable to pick him out * * *" is unduly suggestive. We cannot agree. As the state notes, although six photos in an array is standard procedure, there is no rule that mandates this. We also note from our own examination of the array that each of the subjects bears a substantial similarity to each other. Both the investigating officer and the witness testified that the officer gave no indication of which, if any, photo subject was of interest to police. While the officer's statement that the witness should not feel bad if she could not "pick him out" may have indicated that one of the subjects was of interest, this was no more suggestive than presenting the array itself. An individual of ordinary mental acuity would presume that if the police came to him or her with a photo array, one or more of the subjects in the array was of interest. On the whole, in our view, the procedure employed by Toledo police in presenting this photo array was scrupulously not suggestive of a result.
 {¶ 26} Moreover, the witness viewed appellant in a lighted parking garage at a distance of two feet or less for a period of five to ten seconds. She was able to give police what proved to be an accurate description of both the appellant and his car. The array was presented less than two days after the robbery. The witness testified that it took her about a minute (the investigator estimated 30 seconds) to select appellant from the photo array. She testified that she was "80 to 90%" certain of her identification, noting that 100 percent certainty, in her mind, was reserved only for someone with whom *Page 8 
she was acquainted. Consequently, even had the photo array been unduly suggestive, our analysis of the reliability factors suggest that the witnesses photo array identification of appellant was reliable and the trial court properly rejected his motion to suppress. Accordingly, appellant's first assignment of error is not well-taken.
 II. Prosecutorial Misconduct {¶ 27} During closing arguments, the prosecutor sought to analyze the strength of the witness's identification of appellant:
 {¶ 28} "[Y]ou don't look at these facts in a vacuum. You look at them all together. And all of the circumstances surrounding this case indicate that Rahbie Nicholson was the person that robbed her in the parking garage, regardless of whether or not she's 100 percent sure or 80 percent sure.
 {¶ 29} "And, you see, the point of the matter is this is exactly what Rahbie Nicholson is hoping would happen, that she wouldn't have seen him for very long, that there wouldn't have been any DNA, there wouldn't have been any fingerprints, there is no video camera rolling. It's her word against his. But what he didn't count on was that she was going to get the license plate number and she wasn't going to be so scared that she was going to be unable to make an identification within two days."
 {¶ 30} Appellant objected to the use of the phrase, "It's her word against his," in the state's closing. The trial court sustained the objection and directed the jury to ignore the phrase, advising the panel that the defendant had no burden of proof at trial and need not testify. *Page 9 
 {¶ 31} In his second assignment of error, appellant suggests that the prosecutor's use of the phrase "It's her word against his" is an improper comment on appellant's failure to testify at trial.
 {¶ 32} The Fifth Amendment to the Constitution of the United States provides that, "No person shall * * * be compelled in any criminal case to be a witness against himself * * *." The provision is applicable in state criminal proceedings, Malloy v. Hogan (1964), 378 U.S. 1, 6. A corollary to the privilege is that the state may not use a defendant's exercise of his constitutional right to remain silent against him or her. Griffin v. California (1965), 380 U.S. 609, 611. It may be reversible error if a prosecutor comments on a defendant's refusal to testify at trial. Id.; State v. Thompson (1987), 33 Ohio St.3d 1, 4.
 {¶ 33} In assessing a prosecutor's comments, "The [first]question is `whether the language used was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify.'" State v. Webb
(1994), 70 Ohio St.3d 325, 328, citing and quoting Knowles v.United States (C.A.10, 1955), 224 F.2d 168, 170. "[I]solated comments by a prosecutor are not to be taken out of context and given their most damaging meaning." State v. Twyford, 94 Ohio St.3d 340, 356,2002-Ohio-894. Moreover, even it is properly determined that a comment was intended as a reference to a defendant's failure to testify, to constitute reversible error there must be prejudice to the defendant.State v. Zimmerman (1985), 18 Ohio St.3d 43, 45. *Page 10 
 {¶ 34} The comment in question in this matter seems less a comment on the defendant's failure to testify than a reference to a scenario the prosecution projected as a plan by the defendant: be in and out so quickly and leave so little evidence that the case boils down to a witness believability contest. The phrase "her word against his" is a common colloquialism that conveys this thought and, had the defendant not objected to it, we would be hard put to deem its use plain error.
 {¶ 35} More importantly, the defendant did object to the phrase and the trial court sustained the objection and issued a curative instruction that the words be ignored. The jury is presumed to follow the court's instructions. State v. Coleman (1999), 85 Ohio St.3d 129,135, 1999-Ohio-258. Consequently, absent something to suggest that the presumption is invalid, we must conclude that appellant was not prejudiced by the comment. Accordingly, appellant's second assignment of error is not well-taken.
 III. Admission of Firearm {¶ 36} Prior to trial, the state filed a "Motion to Allow [Evid. R.] 404(B) Evidence. In the motion, the state asked that it be permitted to introduce during the robbery trial, inter alia, the chrome .357 Ruger pistol found on appellant when he was arrested. The state asserted that the gun found on appellant linked him to the robbery because of its similarity to the weapon described by the robbery victim. Appellant opposed the motion, but ultimately the court permitted admission of the gun and testimony from the victim that this weapon was the same or substantially similar to the one used by the man who robbed her. *Page 11 
 {¶ 37} In his third assignment of error, appellant maintains that the court's decision to admit the gun was erroneous.
 {¶ 38} A ruling on the admissibility of evidence is within the court's sound discretion and will not be reversed absent an abuse of that discretion. State v. Kinley (1995), 72 Ohio St.3d 491, 497. An abuse of discretion is more than an error of judgment or mistake of law, the term connotes that the court's attitude is arbitrary, unreasonable or unconscionable. State v. Long (1978), 53 Ohio St.2d 91. 98.
 {¶ 39} Evid. R. 404(B) provides:
 {¶ 40} "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."
 {¶ 41} In criminal cases, the prohibition of the rule, "* * * pertains to the establishment of extrinsic acts as a basis for the inference that an individual acted in conformity with `other' actions and the indicated character or form of propensity. The evidence of the extrinsic act is excluded because it is thought that the jury might punish or reward an individual for the discrete conduct rather than weighing only the direct evidence of the specific occurrence." Weissenberger, Weissenberger's Ohio Evidence (2008) 149.
 {¶ 42} At trial one of the investigating officers testified that a chrome .357 pistol is unusually large and unusually expensive and, thus, is not the weapon of choice for the *Page 12 
ordinary armed robber. The robbery victim identified the gun as substantially similar to the one with which she was confronted. The jury was never informed if, or for what, appellant was arrested, only that the gun was found on his person.
 {¶ 43} Had the gun been more common or less ostentatious, this might be a closer call. As it is we have an unusual gun described to police by the victim, found two days later on the defendant and identified by the victim as very much like the gun she saw in the hands of the man who robbed her. In these circumstances, we can only conclude that the gun was offered for the purpose of proving the identity of appellant as the person who robbed the victim. Consequently, the trial court acted within its discretion in admitting the weapon into evidence. Accordingly, appellant's third assignment of error is not well-taken.
 IV. Sufficiency and Weight of Evidence {¶ 44} In his Assignments of Error Nos. Four through Six, appellant asserts that there was insufficient evidence to sustain a conviction for aggravated robbery with a weapons specification and that the verdict was against the manifest weight of the evidence.
 {¶ 45} In a criminal context, a verdict or finding may be overturned on appeal if it is either against the manifest weight of the evidence or because there is an insufficiency of evidence. In the former, the appeals court acts as a "thirteenth juror" to determine whether the trier of fact lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered.State v. Thompkins *Page 13 
(1997), 78 Ohio St.3d 380, 387. In the latter, the court must determine whether the evidence submitted is legally sufficient to support all of the elements of the offense charged. Id. at 386-387. Specifically, we must determine whether the state has presented evidence which, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The test is, viewing the evidence in a light most favorable to the prosecution, could any rational trier of fact have found the essential elements of the crime proven beyond a reasonable doubt. Id. at 390 (Cook, J., concurring); State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of the syllabus. See, also, State v. Eley
(1978), 56 Ohio St.2d 169; State v. Barns (1986), 25 Ohio St.3d 203.
 {¶ 46} In his fourth and fifth assignments of error, appellant maintains that the state presented no evidence of the operability of the gun used in the robbery and that the victim did not identify in court appellant as the man who robbed her.
 {¶ 47} To sustain a firearm specification, the state must prove beyond a reasonable doubt that the defendant possess a firearm and that it was operable at the time of the offense. State v. Murphy (1990),49 Ohio St.3d 206, syllabus. Nevertheless, operability may be proven by circumstantial evidence. Id. "[W]here an individual brandishes a gun and implicitly but not expressly threatens to discharge the firearm at the time of the offense, the threat can be sufficient to satisfy the state's burden of proving that the firearm was operable or capable of being readily rendered operable." Thompkins, supra, at 384.
 {¶ 48} In this matter, the victim testified that appellant came toward her with the barrel of a gun exposed and demanded that she surrender her purse. When she hesitated, *Page 14 
he moved closer, exposed more of the gun's barrel, pointed it more toward the victim and said more forcefully, "I said give me your purse." This is testimony by which the jury could have concluded that appellant brandished a gun and implicitly threatened to discharge it if the victim did not comply with his demands. This is sufficient to establish the operability of the weapon.
 {¶ 49} Alternatively, the jury could have concluded that the gun taken from appellant when he was subsequently arrested was the same weapon he used in the mall robbery. Since this gun was in evidence and could clearly be readily rendered operable, this is sufficient evidence to support the firearm specification.
 {¶ 50} In either event, there was sufficient evidence presented which, if believed, would establish the element of operability in support of a firearm specification. Accordingly, appellant's fourth assignment of error is not well-taken.
 {¶ 51} In his fifth assignment of error, appellant insists that there was no in-court identification of him as the mall robber. Rather, the testimony was that the victim had picked appellant's picture out of a photo array and stated that he was the person who had robbed her. The victim's trial testimony reaffirmed that photo identification, but at no time during trial did the victim identify the live defendant as the robber.
 {¶ 52} While it is unquestionably the better practice to obtain an in-court identification of a defendant, the state is not precluded from proving identity by indirect means when a witness cannot or will not provide such identification. State v. Porter (Dec. 30, 1999), 8th Dist. No. 75452. In this matter the victim picked appellant from a photo *Page 15 
array two days after the robbery. That the individual chosen from the photo array was appellant was undisputed. At trial, the victim reiterated her photo array identification. This was evidence by which the jury could have found beyond a reasonable doubt that appellant was the individual who robbed the victim at the mall. Accordingly, appellant's fifth assignment of error is not well-taken.
 {¶ 53} In his sixth assignment of error, appellant submits that the jury's verdict was against the manifest weight of the evidence. We have carefully reviewed the transcript of these proceedings and the rest of the record and fail to find anything to suggest that the jury lost its way or that any miscarriage of justice resulted from its deliberations. Accordingly, appellant's sixth assignment of error is not well-taken.
 V. State v. Colon {¶ 54} In his remaining assignment of error, appellant insists that his conviction should be vacated because neither the indictment by which he was charged nor the trial court's jury instructions stated the culpable mental states of his offense as mandated in State v.Colon, 118 Ohio St.3d 26, 2008-Ohio-1624.
 {¶ 55} The state responds, noting that Colon was subsequently limited to its facts, State v. Colon, 119 Ohio St.3d 204, 2008-Ohio-3749, and is inapplicable in these circumstances.
 {¶ 56} Colon dealt with the omission on an express mens rea element in an indictment for robbery. The court held that, in certain circumstances, when the indictment omitted such an element the result was a "structural error," 2008-Ohio-1624, ¶ 19, *Page 16 
which was not waived by failure to object at trial. Id. at ¶ 23. Nevertheless, as the court made clear in its reconsideration ofColon, its holding is to be applied prospectively only. 2008-Ohio-3749, ¶ 3. Consequently, since this matter was tried antecedent to the original Colon decision, it is inapplicable to this matter. Accordingly, appellant's seventh assignment of error is not well taken.
 {¶ 57} On consideration whereof, the judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App. R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App. R. 27. See, also, 6th Dist. Loc. App. R. 4.
Mark L. Pietrykowski, J., Arlene Singer, J., Thomas J. Osowik, J., CONCUR.
[1] Appellant has appealed this conviction and that appeal was consolidated with the present matter by this court. Appellant, however, has directed no assignment of error to those proceedings. *Page 1