DECISION AND JUDGMENT
{¶ 1} Appellant, Lawrence Thomas, appeals his conviction in the above-captioned case. For the reasons that follow, we affirm the judgment of the trial court.
 {¶ 2} On September 22, 2005, appellant was indicted on charges of aggravated murder and aggravated robbery, together with a firearm specification. The charges arose from the death of Robert Smith. *Page 2 
 {¶ 3} A jury trial was held in the matter, beginning September 5 and ending September 6, 2006. The evidence adduced at trial demonstrated the following:
 {¶ 4} On September 9, 2005, shortly after midnight, Toledo police officers were dispatched to the Port Lawrence Homes, in Toledo, Ohio, in response to a report that an individual had been shot. Upon their arrival, the police encountered a woman screaming outside Smith's apartment.
 {¶ 5} Inside the apartment, Smith was found dead. His body lay on a mattress that was on the floor in front of a large screen television set, approximately one and one-half to two feet from the front door. His head was propped up on the couch; he was wearing only underwear. Tests revealed that Smith had used cocaine some 24-36 hours before he died.
 {¶ 6} Smith, who was six feet tall, and weighed 357 pounds, had two gunshot wounds in the left side of his chest, both of which went through his heart. One bullet entered the chest directly; the other first went through his left hand. Forensic pathologist Diane Scala-Barnett described the bullet wound through the hand as a "defense wound," that is, the type of wound that is sustained when an individual puts a hand up to protect himself.
 {¶ 7} According to Scala-Barnett, the shooting occurred at a distance of at least 18 inches to two feet, and that, based on the angle of the bullets' trajectories, the shooter must have been higher than the victim, who had likely been in a seated position at the time he was shot. *Page 3 
 {¶ 8} There was no sign of any struggle, and no sign of forced entry. The apartment had not been ransacked. A large hunting knife lay in a sheath on the couch, and a second knife lay on a nearby radiator. A blood spatter pattern that was found on the television had come from Smith's bleeding hand, after it had been shot. No money or drugs were found in the residence.
 {¶ 9} Two spent 9mm casings with no usable prints were found in the area of the victim. Approximately one week after Smith died, an anonymous tipster told the police where the 9mm gun could be found. The gun was located near a large pile of rubbish at the end of a dead end street. It was inside of a black cloth bag and had been hidden beneath a blue tarp. Authorities determined that the gun belonged to William O'Neil.
 {¶ 10} Appellant, William O'Neil, and O'Neil's wife were all identified as possible suspects. Appellant consented to have his first interview with police on October 7, 2005. During that interview, appellant admitted to being present when the shooting occurred, but he denied any involvement in the crime and any prior knowledge that the crime was going to take place.
 {¶ 11} During a second interview, conducted on November 3, 2005, appellant recanted his first statement and admitted that, in fact, he had shot Smith. He stated that he had shot Smith accidentally as he was handing Smith the gun for his inspection in connection with a possible drug deal between Smith and O'Neil.
 {¶ 12} During a third interview, conducted later in the day on November 3, 2005, and which included a written statement, appellant stated that he and O'Neil had gone to *Page 4 
Smith's house to buy drugs. (According to appellant, he and Smith had known each other for about 15 years and appellant had regularly purchased drugs from Smith.) In this third and final recitation of events, appellant stated that on the night of the shooting, he introduced O'Neil to Smith, O'Neil purchased some drugs from Smith, and then appellant and O'Neil left Smith's apartment. Once they got outside the apartment, O'Neil told appellant that he wanted to rob Smith and that it would be appellant's responsibility to hold the gun on Smith when they went back into the apartment. According to appellant, the gun accidentally discharged while he was holding it on Smith, killing Smith.
 {¶ 13} The jury, after hearing all of the evidence in this case, found appellant guilty of: (1) aggravated murder; (2) aggravated robbery; and (3) the attendant firearm specification. The trial court sentenced appellant to life in prison, with the possibility of parole after 30 years, for the aggravated murder. Appellant was sentenced to nine years in prison for the aggravated robbery (to be served concurrently with the sentence for aggravated murder), and to three years in prison for the firearm specification (to be served consecutively to the sentences for the other two offenses).
 {¶ 14} Appellant filed a timely appeal, raising the following assignments of error:
 {¶ 15} I. "THOMAS' CONFESSION WAS NOT CORROBORATED BY ANY EVIDENCE, ESPECIALLY AS TO THE CONVICTION FOR AGGRAVATED ROBBERY. THE ABSENCE OF CORROBORATIVE EVIDENCE PRECLUDES THE ADMISSION OF HIS CUSTODIAL STATEMENTS BECAUSE CORPUS DELECTI *Page 5 
[sic] HAS NOT BEEN PROVEN. JUDGMENTS OF ACQUITTAL SHOULD BE ENTERED."
 {¶ 16} II. "THE TRIAL COURT ERRED WHEN IT GAVE THE JURY INSTRUCTIONS FOR AGGRAVATED MURDER AND MURDER, BUT NOT INVOLUNTARY MANSLAUGHTER."
 {¶ 17} III. "THE TRIAL COURT ERRED BY NOT PROVIDING THE JURY WITH A REQUESTED INSTRUCTION FOR DURESS."
 {¶ 18} IV. "THE CONVICTIONS WERE NOT SUPPORTED BY SUFFICIENT EVIDENCE BECAUSE THE STATE FAILED TO PROVE THAT THOMAS COMMITTED AN AGGRAVATED ROBBERY. BECAUSE OF THAT, THE CONVICTION FOR AGGRAVATED MURDER IS, THEREFORE, ALSO LEGALLY INSUFFICIENT."
 {¶ 19} V. "THE CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 20} VI. "THOMAS DID NOT RECEIVE EFFECTIVE ASSISTANCE OF COUNSEL FROM HIS FIRST ATTORNEY, THEREBY CAUSING THOMAS TO BE CONVICTED."
 {¶ 21} VII. "THE INDICTMENT IN THIS CASE DID NOT EXPRESSLY CHARGE THE MENS REA ELEMENT OF THE CRIME OF AGGRAVATED ROBBERY. AS SUCH, THE DEFECTIVE INDICTMENT IS A STRUCTURAL ERROR AND THOMAS' CONVICTIONS FOR AGGRAVATED MURDER AND *Page 6 
ROBBERY, WITH THE ACCOMPANYING FIREARMS SPECIFICATION, MUST BE REVERSED."
 {¶ 22} Appellant argues in his first assignment of error that his confession was not properly introduced, because there was no evidence in addition to the confession tending to establish the corpus delicti, especially as to aggravated robbery. Stated otherwise, appellant's argument is that there must be evidence outside of a defendant's confession tending to establish the corpus delicti, before the confession is admissible.
 {¶ 23} The applicable law is set forth in State v. Maranda (1916),94 Ohio St. 364, wherein it is provided:
 {¶ 24} "By the `corpus delicti' of a crime is meant the body or substance of the crime, included in which are usually two elements: (1) the act; (2) the criminal agency of the act.
 {¶ 25} "It has long been established as a general rule in Ohio that there must be some evidence of a confession, tending to establish the corpus delicti, before such confession is admissible. The quantum or weight of such outside or extraneous evidence is not of itself to be equal to proof beyond a reasonable doubt, nor even enough to make it a prima facie case." Id., at the syllabus.
 {¶ 26} It should be emphasized that the burden on the prosecution to show corpus delicti is "minimal." State v. Kesler, 3d Dist. No. 13-06-09, 2006-Ohio-6340, ¶ 40, citing State v. Van Hook (1988),39 Ohio St.3d 256, 261. There need only be some evidence tending to prove the fact that a crime was committed. Id., citing Maranda, *Page 7 94 Ohio St. at 371. Such evidence need not be direct; instead, circumstantial evidence may be relied upon to show corpus delicti. Id.
 {¶ 27} In the instant case, abundant evidence was introduced, outside of appellant's confession, which tended to prove the fact that a crime was committed. Accordingly, we conclude that the admission of the confession was proper. Appellant's first assignment of error is found not well-taken.
 {¶ 28} Appellant argues in his second assignment of error that the trial court erred in failing to provide the jury with a requested instruction for involuntary manslaughter, because the evidence "did not clearly support the conviction for aggravated murder."
 {¶ 29} A jury instruction on a lesser included offense needs to be provided "only where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction upon the lesser included offense." State v. Thomas (1988), 40 Ohio St.3d 213,216. Involuntary manslaughter as set forth in R.C. 2903.04 is a lesser included offense of felony murder as set forth in R.C. 2903.02(B).State v. Lynch, 98 Ohio St.3d 514, 2003-Ohio-2284, ¶ 79. A felony murder occurs where an offender causes "the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree * * *." R.C. 2903.02(B). Involuntary manslaughter, on the other hand, results from "the offender's committing or attempting to commit a felony * * * [or] a misdemeanor * * *." R.C. 2903.04(A), (B). *Page 8 
 {¶ 30} In the instant case, there is no evidence to support the lesser included crime of involuntary manslaughter, as the defendant in his own confession admitted to all of the elements of an aggravated robbery. Aggravated robbery is both an offense of violence and a felony of the first degree. State v. Duncan, 8th Dist. No. 87220, 2006-Ohio-5009, ¶ 6. Accordingly, the trial court did not err in refusing to instruct the jury on the lesser included offense of involuntary manslaughter. Appellant's second assignment of error is found not well-taken.
 {¶ 31} Appellant argues in his third assignment of error that the trial court erred in failing to provide the jury with a requested instruction on the affirmative defense of duress.
 {¶ 32} The defense of duress is very limited and should only be applied in rare instances. State v. Cross (1979), 58 Ohio St.2d 482,488. To successfully raise the defense, a criminal defendant has the burden of going forward with "evidence of a nature and quality sufficient to raise [it]." State v. Getsy (1998), 84 Ohio St.3d 180,198.
 {¶ 33} A defendant is said to be under duress where he is compelled to commit a crime by another, under threat of imminent death or serious bodily injury. Id. at 199. The force compelling the defendant's conduct "must remain constant, controlling the will of the unwilling [defendant] during the entire time he commits the act, and must be of such a nature that the [defendant] cannot safely withdraw." Id. "The defendant must subjectively believe he is being threatened with imminent death or serious bodily injury if he does not commit the crime;" further, "[t]he defendant's subjective belief that he is in *Page 9 
danger of imminent death or grave bodily injury must be objectively reasonable based upon the evidence presented." State v. Elijah (July 14, 2000), 2d Dist. No. 18034.
 {¶ 34} Evidence is sufficient to raise the affirmative defense of duress "where a reasonable doubt of guilt has arisen based on a claim of duress"; "[i]f the evidence generates only a mere speculation or possible doubt, such evidence is insufficient to raise the affirmative defense, and submission of the issue to the jury will be unwarranted."Getsy, supra, at 198-199.
 {¶ 35} Applying the foregoing standard to the instant case, we cannot say that the trial court erred in failing to instruct on the affirmative defense of duress. Although evidence was presented to suggest that O'Neil had previously made threats against appellant, and that, on one occasion, O'Neil had shot at appellant, and, on another occasion, had set fire to appellant's mother's van, and although additional evidence established that appellant had at one time obtained a protection order against O'Neil, there was nothing to suggest that at the time the crimewas committed in this case appellant had any subjective belief that he was being threatened with imminent death or serious bodily injury if he failed to commit the crime against Smith. Even assuming, arguendo, that appellant did subjectively believe he was in imminent danger of death or serious bodily injury, such belief would not have been objectively reasonable based upon the evidence presented. Appellant's third assignment of error is, therefore, found not well-taken. *Page 10 
 {¶ 36} Appellant argues in his fourth assignment of error that his conviction was not supported by sufficient evidence; and in his fifth assignment of error, he argues that the verdict was against the manifest weight of the evidence.
 {¶ 37} In a criminal case, a verdict may be overturned on appeal if it is either against the manifest weight of the evidence or because there is an insufficiency of evidence. Where the question involves the sufficiency of the evidence, the court must determine whether the evidence submitted is legally sufficient to support all of the elements of the offense charged. State v. Thompkins (1997), 78 Ohio St.3d 380,386-387. Specifically, the court must determine whether the state has presented evidence which, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. State v.Nicholson, 6th Dist. Nos. L-08-1136, L-08-1137, 2009-Ohio-518, ¶ 45. The test is, viewing the evidence in a light most favorable to the prosecution, whether any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Id. Where the question involves the manifest weight of the evidence, the appeals court acts as a "thirteenth juror" to determine whether the trier of fact lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered.Thompkins, supra, at 387.
 {¶ 38} In the instant case, appellant was convicted of aggravated murder, pursuant to R.C. 2903.01(B), and aggravated robbery, pursuant to R.C. 2911.01. *Page 11 
 {¶ 39} R.C. 2903.01(B) relevantly provides:
 {¶ 40} "No person shall purposely cause the death of another * * * while committing or attempting to commit, or while fleeing immediately after committing or attempting to commit * * * aggravated robbery * * *."
 {¶ 41} R.C. 2911.01(A)(1) relevantly provides:
 {¶ 42} "(A) No person, in attempting or committing a theft offense, as defined in 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following:
 {¶ 43} "(1) Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it[.]"
 {¶ 44} Appellant argues that the evidence was insufficient to prove: (1) that appellant "purposely caused" the death of Smith; and (2) that a theft offense occurred. To the contrary, appellant's confession confirms each and every element of the aggravated robbery. By appellant's own admission, the shooting occurred at appellant's hands, during the commission of the aggravated robbery. Evidence that Smith was shot not once, but twice amply supports the state's position that appellant "purposely caused" the victim's death. Viewing the evidence in a light most favorable to the prosecution, we find that any rational trier of fact could have found the essential elements of the crimes charged proven beyond a reasonable doubt. We likewise find nothing in the record to suggest that the trier of fact lost its way, or that such a manifest miscarriage of justice *Page 12 
occurred that a new trial should be ordered. For the foregoing reasons, appellant's fourth and fifth assignments of error are found not well-taken.
 {¶ 45} Appellant argues in his sixth assignment of error that he received ineffective assistance of counsel, because his trial counsel permitted him to be interviewed by the police and, thereby, make incriminating statements about himself.
 {¶ 46} To establish a violation of the Sixth Amendment right to effective assistance of counsel, an accused must show: (1) that counsel's performance was deficient; and (2) that counsel's deficient performance resulted in prejudice. Strickland v. Washington (1984), 466 U.S. 668, 687; State v. Bradley (1989), 42 Ohio St.3d 136, at paragraph two of syllabus. Prejudice exists when there is a reasonable probability that but for counsel's deficient performance, the outcome of the trial would have been different. Strickland, supra, at 694; Bradley, supra, at paragraph three of the syllabus. A "reasonable probability" is a probability that is sufficient to undermine confidence in the outcome of the proceedings. Strickland, supra; Bradley, supra, at 142. The burden of proving ineffective assistance of counsel is on the accused, who must overcome a strong presumption of trial counsel's adequate performance.Strickland, supra, at 687; Bradley, supra, at 142.
 {¶ 47} "The focus of an ineffective assistance of counsel inquiry is whether defense counsel's performance was such as to undermine the integrity of the adversarial process." State v. Reker (May 6, 1994), 2d Dist. No. CA 14124. *Page 13 
 {¶ 48} As indicated above, appellant's sole concern regarding this assignment of error is that his trial counsel did not dissuade him from participating in interviews with police. Such argument appears to be grounded on nothing more than the fact that the interviews resulted in a bad outcome for appellant. A bad outcome, in and of itself, has been roundly rejected as a basis for establishing a claim for ineffective assistance of counsel, for the simple reason that such a test "would devastate the practice of law by putting all attorneys at risk all of the time no matter what they did," because "the most effective counsel in the world can still lose a case." Reker, supra (rejecting the defendant's claim of ineffective assistance of counsel based on trial counsel's having allowed his client, who was subsequently convicted, to be interviewed by police). In relying on the fact that he had a bad outcome as a result of his police interviews, appellant has failed to establish that his counsel's performance was such as to undermine the integrity of the adversarial process. See id. Appellant's sixth assignment of error is, therefore, found not well-taken.
 {¶ 49} Appellant argues in his seventh, and final, assignment of error, that his conviction should be reversed pursuant to State v.Colon, 118 Ohio St.3d 26, 2008-Ohio-1624, because the indictment by which he was charged did not state the culpable mental state for the offense of aggravated robbery. This court has already determined thatColon applies only to cases in which a defendant has been indicted for the offense of robbery in violation of R.C. 2911.02(A)(2). State v.Horner, 6th Dist. No. L-07-1224, 2008-Ohio-6169, ¶ 20. As appellant was not so indicted in this case, we conclude that State v. Colon *Page 14 
does not apply. Appellant's seventh assignment of error is, therefore, found not well-taken.
 {¶ 50} For all of the foregoing reasons, the judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App. R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App. R. 27. See, also, 6th Dist. Loc. App. R. 4.
Peter M. Handwork, J., Arlene Singer, J., and William J. Skow, P.J., concur. *Page 1