DECISION AND JUDGMENT
{¶ 1} Appellant, Abayomi Miller, appeals his convictions for possession of cocaine and for carrying a concealed weapon, in the above captioned case. For the reasons that follow, we affirm the judgment of the trial court.
 {¶ 2} On January 9, 2007, appellant was indicted on one count of possession of cocaine, a fifth degree felony in violation of R.C. 2925.11(A) and (C)(4)(a), and one *Page 2 
count of carrying a concealed weapon, a fourth degree felony in violation of R.C. 2923.12(A)(2) and (G).
 {¶ 3} Trial was held before a jury beginning January 7, 2008, and ending January 9, 2008. Evidence adduced by the state established the following facts. In the early morning hours of October 11, 2007, the Toledo Police Mountain Bike Unit was conducting surveillance at the intersection of Bancroft and Ashland Avenues, when, at approximately 1:40 a.m., Officer Peter Siwa and Detective Shelly Kilburn noticed appellant riding his bicycle in their direction. They observed appellant to be riding very slowly while looking around in all directions. Appellant stopped at a Sunoco gasoline station that was located at the subject intersection. The business was closed for the night. Siwa and Kilburn observed appellant apparently pretending to use an air pressure machine to inflate his tires. (According to the police witnesses, appellant was not observed placing any money into the machine.) After a few seconds, appellant left his bike and walked around to the back of the station. He emerged about 30 seconds later, mounted his bike, and rode away "like a bat out of hell." Perceiving that something was not right, the bike unit, including in addition to Siwa and Kilburn, Officer Alanna Whatmore, Detective Israel Garrett and Sergeant Mike Gilmore, pursued appellant in order to question him.
 {¶ 4} Garrett, who was the lead officer chasing appellant, yelled to appellant, "Stop. Police." Appellant turned his head to look behind him. Upon seeing Garrett, who was wearing his police uniform, appellant turned back around and began pedaling even *Page 3 
faster. When appellant arrived at his home at 2233 Warren Street, he got off his bike and ran up the front steps to the porch where two other young males were standing. As he was mounting the steps, Garrett saw appellant throw something to the right of the porch with his right hand.
 {¶ 5} When the four other bike unit police arrived at the front porch, several of the officers, including Siwa, Garrett, and Whatmore, were allowed into the house by appellant's grandmother, Irma Roberts, and sister, Leigh Miller. A search revealed that appellant was not in the house. Appellant's grandmother suggested that the officers check the attic, which was accessible only from a stairway located at the back of the house. When the officers arrived at the door to the attic, they noticed that it was blocked by a piece of furniture. Once the obstruction was cleared, the officers entered the attic and subsequently discovered that appellant had climbed through a window in the attic to the roof. Appellant attempted to escape by leaping to his neighbor's roof, but, eventually, he was persuaded by his sister to surrender.
 {¶ 6} While the search of the inside of the house was being conducted, Kilburn searched the area near the front porch where Garrett had seen appellant throw something. There, on the ground, between Garrett's front porch and the front porch of the next door neighbor, she found a loaded and operable .380 semi-automatic handgun, a plastic baggie containing crack cocaine, and a drug scale. Kilburn specifically noted that the gun and cocaine baggie were slightly wet from the rain, but not dirty, as one would expect if the items had been lying there for any significant length of time. *Page 4 
 {¶ 7} State's witness Chad Quigley testified that he and his wife had been friends with appellant. In October 2007, appellant discussed his arrest when he was bragging to Quigley about his attempts to evade the police by leaping from roof to roof. Quigley testified that appellant's story to him was that appellant was supposed to have completed a deal that day, but that the deal fell through, leaving appellant in possession of the gun and cocaine. Appellant told Quigley that while he was at the gas station on the morning in question, he became aware that he was being watched by the police, and, as a result, he fled, throwing the items down as he entered his house.
 {¶ 8} Shortly after appellant told Quigley this story, Quigley discovered that appellant was having an affair with his wife. Quigley eventually contacted the prosecutor's office regarding his knowledge of appellant's involvement.
 {¶ 9} Appellant presented evidence that when Quigley found out about the affair, he went to appellant's house on several occasions to berate him about the relationship.
 {¶ 10} Appellant's sister, Leigh, testified that after she had accompanied the police in the search of the upstairs portion of the house, she observed the officer who found the gun, cocaine, and scale by the porch searching for something with a flashlight and finding the subject handgun wedged between a pipe and an eaves trough at the next door neighbor's house.
 {¶ 11} Appellant testified, on his own behalf, to the following. Prior to approaching the intersection of Bancroft and Ashland, appellant had seen "the biker cops" riding in his neighborhood after having arrested one of his friends. Appellant then went *Page 5 
to the gas station on his bicycle for the purpose of filling his tires. He was riding slowly, because the area is a high crime area and also because someone (other than Chad Quigley) had tried to run him down with a car earlier in the day. As he approached the air pump, he saw the individual who had tried to run him down making a drug sale to a prostitute and to "a couple of the other drug buddies." As appellant rode his bike into the gas station, a car pulled up and used the air pump machine such that appellant did not have to insert money. Because his tire's inner tube tip was bent, he looked around and found a little stick to bend the inner tube back into place so he could connect the hose. Appellant put air in his tires, and then noticed that the man sitting in his car and selling crack cocaine to the prostitute across the street was threatening to kill him. He and the man exchanged taunts. Appellant, who denied that he ever went to the rear of the gas station, then became scared and began pedaling rapidly toward his house. When he arrived at his house, he threw down his bike and was mounting the steps to the porch, which contained about seven males of about his age, when he became aware that he was being chased by a police officer who requested him to stop. Instead of stopping, appellant entered the house, climbed to the attic and then to the roof, where he hid, becoming especially afraid when he heard the police below yell out that they had found a gun. Appellant leaped to his neighbor's roof, but then surrendered. Appellant denied having had a gun or drugs and denied having thrown down anything (other than his bicycle). *Page 6 
 {¶ 12} After hearing all of the evidence, the jury returned with a verdict of guilty to both of the charges alleged in the indictment. Appellant was sentenced to a term of ten months in prison for the charge of possession of cocaine, and a term of 15 months in prison for the charge of carrying a concealed weapon. The sentences were ordered to be served concurrently. In addition, as a result of his conviction for possession of cocaine, appellant's driver's license was suspended for a period of three years.
 {¶ 13} Appellant timely filed a notice of appeal, raising the following assignments of error:
 {¶ 14} I. "DEFENDANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT."
 {¶ 15} II. "THERE WAS INSUFFICIENT EVIDENCE TO SUPPORT DEFENDANT'S CONVICTION OF POSSESSION."
 {¶ 16} We begin by examining appellant's second assignment of error, challenging the sufficiency of the evidence. In reviewing a record for sufficiency of the evidence, a court must determine whether the evidence submitted is legally sufficient to support all of the elements of the offense charged. State v. Thompkins (1997), 78 Ohio St.3d 380, 386-387. Specifically, the court must determine whether the state has presented evidence which, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. State v. Nicholson, 6th Dist. Nos. L-08-1136. L-08-1137, 2009-Ohio-518, ¶ 45. *Page 7 
 {¶ 17} To establish the offense of possession of cocaine, the state was required to prove, beyond a reasonable doubt, that appellant had knowingly obtained, possessed, or used cocaine. R.C. 2925.11(A) and (C)(4)(a).
 {¶ 18} To establish the offense of carrying a concealed weapon, the state was required to prove that appellant had knowingly carried or had, concealed on his person or concealed ready at hand, a handgun other than a dangerous ordnance, and that the weapon involved was a firearm that was loaded or for which appellant had ammunition ready at hand. R.C. 2923.12(A)(2) and (G).
 {¶ 19} In the instant case, the record contains sufficient evidence to show that appellant knowingly possessed the cocaine and the loaded handgun. The police officers did not observe appellant with any other person at the gas station or in their pursuit of appellant to his house. Officer Garrett himself saw appellant throw something to the right of the porch with his right hand. A search of the area minutes later revealed the loaded gun and drugs on the ground. Quigley's testimony corroborated the testimony of the police and supported the allegations that appellant had possessed the gun and drugs. A rational fact finder could well conclude, on the basis of these facts, that appellant had the items secreted on his person until just prior to entering the house, when he ejected them in an unsuccessful attempt to avoid criminal liability.
 {¶ 20} Because a rational trier of fact could have found the essential elements of the crimes charged proven beyond a reasonable doubt, appellant's second assignment of error is found not well-taken. *Page 8 
 {¶ 21} Appellant argues in his first assignment of error that his conviction on both counts is against the manifest weight of the evidence. An appellate court considering the manifest weight of the evidence acts as a "thirteenth juror" to determine whether the trier of fact lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered.Thompkins, supra, at 387. In making this determination, we review the entire record, weigh the evidence and all reasonable inferences, and consider the credibility of witnesses. Id. A conviction on manifest weight grounds will be reversed only in the most "`exceptional case in which the evidence weighs heavily against the conviction.'" Id., quotingState v. Martin (1983), 20 Ohio App.3d 172, 175. In addition, we remain mindful that "`it is inappropriate for a reviewing court to interfere with factual findings of the trier of fact * * * unless the reviewing court finds that a reasonable juror could not find the testimony of the witness to be credible.'" State v. Brown, 10th Dist. No. 02AP-11, 2002-Ohio-5345, ¶ 10, quoting State v. Long (Feb. 6, 1997), 10th Dist. No. 96APA04-511.
 {¶ 22} In considering this assignment of error, we initially observe that appellant's claim that his conviction is not supported by the weight of the evidence is based entirely upon facts gleaned only from testimony presented by the defense in this case. An examination of the evidence from the whole case, including the testimony of the four police officers and of Chad Quigley, demonstrates that there was ample credible evidence to support appellant's conviction on both counts. We find nothing in the record to suggest that the trier of fact lost its way, or that such a manifest miscarriage of justice *Page 9 
occurred that a new trial should be ordered. For the foregoing reasons, appellant's first assignment of error is found not well-taken.
 {¶ 23} The judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App. R. 24.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App. R. 27. See, also, 6th Dist. Loc. App. R. 4.
Mark L. Pietrykowski, J., Thomas J., Osowik, J., concur. *Page 1